UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSEPH EDWARD CONNER,<br><br>    Defendant. | Case No. 15-cr-00296-HSG-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISCLOSURE; DIRECTING IN CAMERA REVIEW OF INFORMANT; AND GRANTING MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 32, 38, & 39 |

Before the Court is Defendant Joseph Edward Conner's ("Defendant's") motion to disclose confidential informant and related discovery materials. Dkt. No. 32 ("Mot."). Defendant contends the informer's privilege under *United States v. Roviaro* does not apply and requests disclosure of the informant's identity, his/her contact information, and his/her file. In the alternative, Defendant asks that the Court conduct an *in camera* review of the informant under *United States v. Spires* to determine whether disclosure is warranted in light of Defendant's potential affirmative defenses. In support of his disclosure motion, Defendant has lodged two declarations by counsel with the Court, and moves to file the first under seal and the second under seal solely for *in camera* review. Dkt. Nos. 38 & 39. In any case, Defendant requests that all materials related to the informant be ordered disclosed to the extent that they qualify as exculpatory materials under *Brady v. Maryland*.

The Court has carefully considered the arguments of the parties, both in their written submissions and at oral argument. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for disclosure and discovery. The Court **DIRECTS** the government to make the informant available to testify *in camera* and takes under submission Defendant's request for disclosure of the related discovery materials. The Court also **GRANTS** Defendant's motions to file under seal and to file under seal solely for *in camera* review.

## I. BACKGROUND

The Drug Enforcement Administration ("DEA") became aware of Defendant in connection with an investigation into an organization allegedly involved in the large-scale manufacturing and distribution of controlled substances. Dkt. No. 33 ("Opp.") at 1 & n.2. Wiretap surveillance revealed that Defendant was involved in the purchase and sale of controlled substances. *Id.* & n.4.

At some point, the DEA spoke with a confidential informant ("Informant") who provided information corroborating that Defendant was a purchaser and distributor of controlled substances. *Id.* at 3. In particular, the Informant claimed that he/she had picked up large quantities of methamphetamine from Defendant at his home in the past. Dkt. No. 1, Attachment A ("Agent Decl.") ¶¶ 15-17. The Informant provided this information to the DEA after he/she was arrested, admittedly in the hope of receiving beneficial consideration regarding his/her pending charge(s). Opp. at 3-4. To that end, the Informant also apparently agreed to participate in a sting operation with the DEA focused on Defendant. *See id.* at 4.

On June 20, 2014, the Informant told the DEA that he/she was going to attempt to purchase methamphetamine from Defendant, with whom the Informant had not spoken in months. Dkt. No. 40 ("Supp. Brief") at 2. They spoke, but no such transaction was arranged during that conversation. *Id.* At some time in August 2014, the Informant again contacted Defendant. *Id.* This time, the Informant successfully negotiated the purchase of a significant quantity of methamphetamine from Defendant to occur on August 22, 2014. Opp. at 4; Agent Decl. ¶ 25. There appears to be no governmental record of the contents of either of these conversations between Defendant and the Informant. Supp. Brief at 2-3.

On August 22, 2014, the DEA and local law enforcement officers conducted surveillance near Defendant's residence. Agent Decl. ¶ 26. The Informant spoke with Defendant on the telephone, and the Defendant told him/her that he did not have the methamphetamine yet. *Id.* ¶ 28. Thereafter, law enforcement officers observed a third party deliver a paper bag to Defendant's home, after which Defendant was seen with the bag getting into his truck and driving away. *Id.* ¶¶ 31-32. Defendant then sent the Informant text messages stating that he had the methamphetamine and was ready to complete the arranged transaction. *Id.* ¶¶ 33-34. Defendant arrived at a set

location, got out of his truck, and retrieved a black box from the back of his truck. *Id.* ¶¶ 35-36.

At this point in the narrative, there appears to be a potential factual dispute between the parties. The government represents in its opposition brief that Defendant then walked to the undercover vehicle where an undercover DEA agent ("Undercover Agent") and the Informant were waiting. Opp. at 4; *see also* Agent Decl. ¶ 36. Defense counsel, however, claims that a DEA investigative report dated August 22, 2014 shows that the Informant and Defendant met at Defendant's truck before getting into the undercover vehicle. Supp. Brief at 3. The government does not deny that such a meeting occurred. To the extent that a conversation between the Informant and Defendant occurred at that time, there appears to be no governmental record of it.

In any event, it is undisputed that Defendant ultimately entered the undercover vehicle. Inside the vehicle, Defendant handed the black box, which contained the negotiated quantity of methamphetamine, to the Undercover Agent, who, in turn, paid Defendant the negotiated amount. Agent Decl. ¶ 37. Defendant attested to the quality of the methamphetamine and the encounter concluded. *Id.* ¶¶ 37-39. The Informant apparently was present inside the vehicle the whole time. *See id.* ¶ 36. The entire transaction inside the undercover vehicle was captured on video and audio, a copy of which the government has already produced to Defendant. Opp. at 5.

The Undercover Agent subsequently negotiated two additional methamphetamine transactions with Defendant that occurred on November 6, 2014, and December 16, 2014. *Id.* at 5-6. The government represents that the Informant played no role in either of those two negotiations or transactions. *Id.* at 7. But defense counsel claims that a DEA investigative report dated September 3, 2014 notes that the Informant and Defendant spoke by telephone and met in person outside the presence of law enforcement after the August 22 transaction. Supp. Brief at 3. And another DEA report dated November 3, 2014 apparently notes that the Informant spoke with Defendant by telephone outside the presence of law enforcement shortly before the November 6 transaction. *Id.* at 4. The government does not mention or contest the existence of either of these interactions between Defendant and the Informant in its briefs. *See* Opp. at 5-6.

Before conducting the final transaction during which Defendant was arrested, Agent Decl. ¶ 24, the government secured a search warrant for Defendant's home based in part on the

3

Informant's statements, *see generally* Dkt. No. 1.  The government filed a complaint in this Court the day after the arrest.  Dkt. No. 1.  A grand jury subsequently returned a three-count indictment against Defendant under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C) for distribution and possession of methamphetamine with the intent to distribute in connection with each of the three transactions discussed above.  Dkt. No. 21.

Defendant then filed the instant motion.  The government filed an opposition brief, and Defendant replied, Dkt. No. 35 ("Reply").  Defendant contends that the Informant "coerced, pressured, and entrapped" him to commit the charged crimes.  Reply at 1; *see also* Mot. at 4, 8.  As a result, Defendant seeks production of the Informant's identity, his/her contact information, and his/her informant file under *United States v. Roviaro* and *Brady v. Maryland*, contending that this information is material to his potential affirmative defenses.  Defendant also asserts that the government may not invoke the informer's privilege because he already knows the Informant's identity.  Reply at 3-4.

The government responds that disclosure is not necessary to any pre-trial motion practice because there is independent probable cause to support the search warrant, mooting any value of disclosure.  Opp. at 9-10.  Furthermore, the government represents that they have no intention to call the Informant as a trial witness, making the Informant's identity irrelevant.  *Id.* at 12.

The Court held a hearing on October 19, 2015, at which the Court ordered the parties to submit supplemental briefing on the issue of Defendant's potential affirmative defenses.  *See* Dkt. Nos. 36 & 37.  Defendant filed a supplemental brief and lodged two declarations by counsel, which were accompanied by attendant motions to file them under seal.  Dkt. Nos. 38 & 39.  The first sealed declaration, which was served on the government, includes defense counsel's proffer as to the identity of the Informant.  The second sealed declaration, which was lodged only with the Court for *in camera* review, contains defense counsel's proffer regarding the factual basis of Defendant's potential affirmative defenses.  The government filed a supplemental response brief, but did not address Defendant's first sealed declaration on the merits.  Dkt. No. 41.

///

///

## II. LEGAL STANDARDS

### A. Disclosure of Confidential Informant Under *United States v. Roviaro*

To gain access to an informant's identity, the defendant must articulate facts showing that "in an actual trial of a federal criminal case," the informant can provide information "relevant and helpful to the defense of an accused" or "essential to a fair determination of [a] cause"—especially where the informant is an active participant or witness to the charged offense. *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957); *McCray v. Illinois*, 386 U.S. 300, 309–10 (1967). Disclosure of an informant's identity is proper when there is "more than a 'mere suspicion' of the value" of the informant's information. *United States v. Amador–Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993), quoting *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990). Defendant carries the burden of demonstrating the need for disclosure. *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir. 1993). If the defendant makes a minimum threshold showing that disclosure would bear on at least one defense, an *in camera* hearing with the informant is justified. *See United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993).

Should the Court conclude that disclosure of the informant's identity might be necessary, the Court must balance several factors, including, but not limited to: (1) the crime charged; (2) possible defenses; and (3) the possible significance of the informant's testimony. *Roviaro*, 353 U.S. at 62; *United States v. Si Keung Wong*, 886 F.2d 252, 255–56 (9th Cir. 1989). This assessment requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. Other "relevant factors" include consideration of the informant's safety following disclosure. *Wong*, 886 F.2d at 256.

### B. Production of Discovery Materials Under *Brady/Giglio*

Due process imposes an "inescapable" duty on the prosecutor "to disclose known, favorable evidence rising to a material level of importance." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes both exculpatory and impeachment material that is relevant either to guilt or punishment. *See United States v. Bagley*, 473 U.S. 667, 674–76 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The prosecutor is charged with knowledge of any *Brady* material of which her office or the

5

investigating law enforcement agency is aware. *See Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (per curiam).

### III. DISCUSSION

#### A. Sealing Orders Regarding Defense Counsel's Declarations

Before turning to the substance of Defendant's motion, the Court addresses Defendant's requests to file his counsel's declarations under seal. Under Criminal Local Rule 56-1, a sealing order may issue only upon a request that establishes that a document is sealable because "the safety of persons or a legitimate law enforcement objective would be compromised by the public disclosure of the contents of the document." N.D. Cal. Crim. L.R. 56-1(b).

The two declarations of defense counsel at issue are extremely sensitive because they both contain the possible identity of a confidential informant. Accordingly, the Court orders both declarations to be filed under seal. Additionally, the Court permits the second sealed declaration, which contains an attorney proffer regarding the factual basis of Defendant's potential affirmative defenses, to be filed for *in camera* review without disclosure to the government. *See United States v. Williams*, No. C 10-00230, 2010 WL 3447704, at *2 & n.1 (N.D. Cal. Aug. 30, 2010); *see also United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987) (district courts may authorize *ex parte*, *in camera* review in criminal matters where it is necessary to "keep sensitive information from the opposing party").

#### B. Disclosure of the Confidential Informant

The Court first addresses Defendant's threshold argument that the government may not invoke the informer's privilege because he already knows the identity of the Informant. In support of this proposition, Defendant cites to *Roviaro* itself, which provides that: "[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. at 60. Defendant asks that the Court apply that rule in the same manner as *United States v. Helgat*, which held the informer's privilege inapplicable on that basis where the government failed to contest the defendant's guess as to the identity of the informant. No. 2:13-cr-241, 2014 WL 1612686, at **4-5 (D. Nev. Apr. 22, 2014).

Despite the fact that the government has failed to rebut this threshold argument or to

contest Defendant's guess as to the informant's identity in this case, the Court concludes that Defendant's argument fails as a matter of law. While Defendant may have a strong suspicion that he knows who the Informant is, there is nothing in the record to suggest that the government has actually "disclosed" the Informant's identity to Defendant within the meaning of *Roviaro*. In this context, the government must affirmatively inform a defendant of an informant's identity to effect a qualifying disclosure. Otherwise, a defendant could simply proffer his best guess as to an informant's identity and then demand that the government admit or deny its veracity on pain of forfeiting the privilege. Any time the defendant guessed correctly, the government would be placed in a Catch-22 that would render the privilege meaningless: the government would either have to disclose that Defendant was correct and waive the privilege or remain silent and forfeit the privilege, thereby requiring disclosure. While *Helgat* holds to the contrary, the Court respectfully disagrees with its analysis.

Furthermore, even if the government had disclosed the Informant's identity to Defendant, that would not complete the disclosure necessary to undermine the informer's privilege in this case. The Ninth Circuit has explained that the informer's privilege is only mooted by disclosure where the identity of the informant has been disclosed to *everyone* "who would have cause to resent the communication." *United States v. Long*, 533 F.2d 505, 507-08 (9th Cir. 1976) (per curiam) ("Persons other than the particular defendant may have cause to resent the informant's conduct, and disclosure to the defendant alone may not be equivalent to disclosure to these other persons.") In *Long*, as here, the informant was admittedly involved in a criminal enterprise that engaged in drug trafficking before he began cooperating. *Id.* The Ninth Circuit found that, like the Defendant, the informant's former colleagues would also likely "resent" his communications with the government (to put it mildly). *Id.* For that reason, even though the government in that case had provided the informant's identity to the defendant under a protective order, disclosure under *Roviaro* remained incomplete as to the world because not all persons who would resent the informant's cooperation were "aware of his role" as an informant. *Id.* Here, to the same effect, there is no evidence in the record suggesting that all persons who would have cause to resent the Informant's cooperation with the government are "aware of his role" as a confidential informant.

1  Defendant, therefore, has failed to show that complete disclosure has occurred.

2  Turning to the substantive question of whether the informer's privilege applies, the Court
finds that Defendant has met *Roviaro*'s threshold requirement that disclosure of the Informant's
identity might be necessary to his defense. 353 U.S. at 60-61. Defendant claims that he may
possess an affirmative defense of entrapment, duress, or undue influence based in part on
communications he had with the Informant that preceded some or all the illicit transactions at
issue. To that effect, there are potentially five separate instances on which the Informant spoke
with Defendant after he/she was recruited by the DEA without the communications being
recorded. Those instances include: (1) the June 20, 2014 conversation in which the Informant
tried and failed to negotiate the purchase of methamphetamine from Defendant; (2) the August
2014 conversation in which the Informant succeeded in negotiating the purchase of
methamphetamine from Defendant; (3) the August 22, 2014 conversation that occurred
immediately before the first illicit transaction; (4) the post-August 22, 2014 conversation that
occurred after the first illicit transaction; and, (5) the pre-November 6, 2014 conversation that
occurred before the second illicit transaction. The government has not denied in its papers that
any of these alleged conversations occurred.

Although the facts proffered by defense counsel in the second sealed declaration about
what occurred during those conversations are not conclusive, the Court finds that there is more
than "mere suspicion" of the value of the Informant's information with respect to an entrapment,
duress, or undue influence defense. *See Williams*, 2010 WL 3447704, at *2 (the defendant met his
threshold burden of showing relevance with respect to the inducement element of an entrapment
defense where the informant had conversations with the government and with the defendant
outside of the record and the defense counsel proffered a good faith factual basis in a sealed
declaration); *see also Amador–Galvan*, 9 F.3d at 1417 (setting forth threshold test). Any argument
that Defendant ultimately will be unable to make out an entrapment or other defense at trial is
premature at this juncture, especially with respect to predisposition, an issue on which the
government would ultimately bear the burden. *See Williams*, 2010 WL 3447704, at *2.

The Court disagrees with the government's argument that the Informant's identity

necessarily could not be relevant to any pretrial defense motions. Based on his assertion of an entrapment or duress defense, Defendant has met the threshold required to trigger an *in camera* review, and depending on what the facts show, the process could lead to a basis for pretrial motions. The government's representation that it does not intend to call the Informant at trial is similarly unavailing. Because Defendant is claiming that the Informant's testimony may be relevant to one or more affirmative defenses, Defendant conceivably could want to call the Informant at trial himself.

Accordingly, the Court orders the government to make the Informant available for *in camera* review under the protocol set forth in *United States v. Spires*. *See* 3 F.3d at 1239 ("Where a defendant makes a showing that identification of the government's confidential informant may be relevant and helpful to a possible defense at trial, a district court abuses its discretion if it fails to hold an in camera hearing on disclosure."); *Amador–Galvan*, 9 F.3d at 1417 (remanding for *in camera* review where threshold test met). The review will occur outside the presence of Defendant and defense counsel. *See United States v. Cerna*, No. CR 08-0730, 2009 WL 2998929, at *14 (N.D. Cal. Sept. 16, 2009) (Alsup, J.) ("A defendant and his or her attorneys may be excluded from such a hearing, to protect the informant's identity.") The Court will inquire at that time about whether Informant had any communications with Defendant outside of the governmental record once the DEA recruited him/her as an informant and the contents of any such communications. Defendant may also submit a list of proposed written questions to the Court within five days of this Order. The Court will consider, but may or may not ask, all of those questions.

**C.     Disclosure of Related Discovery Materials Under *Brady*/*Giglio***

Finally, the Court addresses Defendant's argument that he is entitled to disclosure of all materials within the government's possession that are related to the Informant because they are *Brady*/*Giglio* material. The Court takes Defendant's request under submission pending the *in camera* hearing. There is no evidence in the record showing that the government has possession of evidence favorable and material within the meaning of *Brady*/*Giglio* that has not been disclosed to Defendant. *See United States v. Guzman*, No. CR 08-00521, 2009 WL 734084, at *9 (N.D. Cal.

Mar. 17, 2009) (denying without prejudice the defendant's *Brady*/*Giglio* motion filed in connection with a motion to disclose confidential informant "[i]n the absence of specific argument [about specific documents] by either party, and [given] the Government's assertion that it has no exculpatory evidence to disclose[.]"). Of course, the government has a continuing duty to produce any *Brady*/*Giglio* materials, with or without a court order. *Kyles*, 514 U.S. at 438.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **DIRECTS** that the government make the Informant available for *in camera* review. The government shall contact the Court's Deputy Clerk to set an appropriate date. The *in camera* review shall occur outside the presence of Defendant and defense counsel. Defendant may submit within five days of this Order a list of proposed written questions for the Court to ask the Informant. After the review, the Court will issue a further order on Defendant's instant motion to disclose. The Court also hereby **GRANTS** Defendants' motions to seal, Dkt. Nos. 38 & 39.

**IT IS SO ORDERED.**

Dated: December 10, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge