MICHAEL HINCKLEY, State Bar No. 161645
THE LAW OFFICES OF MICHAEL HINCKLEY
803 Hearst Avenue
Berkeley, California 94710
Telephone: (415) 706-1386

Attorneys for Defendant
JOSEPH E. CONNER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH CONNER<br><br>Defendant. | Case Nos. CR-15-00296 HSG<br><br>**DEFENDANT JOSEPH CONNER'S SENTENCING MEMORANDUM & REQUEST FOR VARIANCE**<br><br>Date: April 10, 2017<br>Time: 2:00 p.m.<br>Hon. Haywood S. Gilliam, Jr. |

## I. **Introduction**

Defendant Joseph Conner ("Conner") pleaded guilty to two counts of Distribution and Possession of Methamphetamine with Intent to Distribute (21 U.S.C. §§ 841(a)(1) and (b)(1)(c)), and one count of Possession of Methamphetamine with Intent to Distribute (21 U.S.C. §§ 841(a)(1) and (b)(1)(c)). Conner also agreed to forfeiture pursuant to 21 U.S.C. § 853 and 21 U.S.C. § 2461(c). The plea was made pursuant 11(c)(1)(A) and 11(c)(1)(B)of the Federal Rules of Criminal Procedure.

Conner is 47 year old family man and proud hard worker. He comes to this Court with regret and remorse for his involvement in this case. Conner has always prided himself on being a husband to a beautiful intelligent woman, a loving and caring father of two young children, and a good provider earning fair pay for hard work. Conner has frankly cherished being a protector and provider for his

children. He is mortified that his actions and mistakes will cause harm and devastation to those very children he wanted to protect more than anything in the world.

Conner does not deny that his actions in and around this case reflect that he succumbed to temptation and acted in a manner inconsistent with his core value system. He openly accepts responsibility for his actions and realizes that there is a price to pay for his conduct. But Conner also wants the Court to know that those who know him best know him to be a generous, caring, hard-working and dependable family man. The letters and statements from friends, co-workers and family members that are filed along with this memorandum are a testament to who Conner is and how he otherwise lived his life.

The Court should also know that as a result of the nature of his work and extraordinary physical toll that work exacts, he experiences chronic pain. He had back surgery a few years ago, knee surgery late last year and shoulder surgery last week. It is likely that he will need to undergo a second back surgery soon (Conner has been sent to see a specialist who is evaluating whether back surgery is recommended). As a result of Conner's numerous physical infirmities, he has difficulty walking and moving, and sometimes just standing can cause him excruciating pain. These infirmities will necessarily make his incarceration extremely difficult as well as make him more vulnerable in a prison population.[1]

Probation has recommended a variance in this case based upon the "history and characteristics of the defendant" and has recommended a less than guidelines sentence. Conner agrees with this recommendation. He does not minimize the seriousness of the offense here, and he accepts responsibility for his actions without hesitation. But he is also a 47 year old man with no prior felony convictions, no prior incarcerations, a laudable work history, and who has without question been a loving, caring and attendant father of his two children. Additionally, Conner has been on supervised

[1] Conner is undergoing physical therapy treatments as part of his recovery from surgery.

pretrial release while litigating this matter. During that time he complied with all of his responsibilities and obligations and has had no incidents and caused no problems. Conner realizes that he must pay his debt to society. But it is also his hope that he will be able to physically return to his children's lives as soon as possible so that he may play a positive and significant role in their continued upbringing and future lives. Accordingly, Conner requests that the Court impose a sentence of no more than five years of incarceration followed by 3 years of supervised release. Such a sentence would be entirely sufficient to meet the goals and purposes of the sentencing statutes and guidelines.

## II. The Offense Conduct

This investigation was initiated as a result of statements and allegations made by an informant who had been arrested on unrelated matters and who was an acquaintance of Conner. In order to earn a lesser sentence for himself the informant agreed to work as an informant with the Drug Enforcement Agency (DEA). A number of communications between Conner and the informant ensued. Eventually the informant arranged for Conner to meet with an undercover DEA agent. Conner subsequently sold methamphetamine to the undercover agent on two occasions and was arrested after arranging for a third transaction.

Conner has pleaded guilty to the three counts contained in the Indictment filed by the government on June 2, 2015. The indictment charges Conner with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) -- Distributing Methamphetamine and Possessing Methamphetamine for Purposes of Distribution.

## III. Sentencing Guideline Calculations - Circumstances Warranting a Downward Variance

As set forth in the Presentence Report, this conviction carries a Base Offense Level of 36. There is a 2 level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Thus, the total offense level is 34.

Conner has a criminal history score of zero. With a criminal history score of zero, Conner is placed in Criminal History Category I.

An offense level of 34, with a Category I Criminal History results in a sentencing guideline range of 151 to 188 months of imprisonment. While Conner does not seek a downward departure, a variance downward from the applicable Guideline range is warranted here.

## IV. Booker Factors

Beyond what may be permissible under the guidelines, the history and characteristics of Mr. Conner and other factors set forth in 18 U.S.C. § 3553(a)(2) support a sentence below the guideline range. As set forth above, in fashioning sentences, courts are asked to impose a penalty that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). Those sentencing purposes are:

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and provided "just punishment");
(b) deterrence;
(c) incapacitation ("to protect the public from further crimes"); and
(d) rehabilitation ("to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner").

(See *United States v. Carty*, 520 F.3d 984, 991 (9th Cir 2008))

In determining the sentence minimally sufficient to comply with the aforementioned purposes of sentencing the court must consider several factors listed in Section 3553(a). These factors are:

(1) "the nature and circumstances of the offense and history and characteristics of the defendant;"
(2) "the kinds of sentences available;"
(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;
(4) the need to avoid unwarranted sentencing disparity; and
(5) the need to provide restitution where applicable.

(18 U.S.C. §3553(a)(1), a(3),(a)(5)-(7).)

Application of the §3553(a) factors and adherence to the §3553(a)(2) purposes to the unique circumstances of Conner's case supports the conclusion that a variance is warranted.

**A. Booker -- Relevant 3553 Facts/Facts in Mitigation**

***Background/Family***

Joseph Conner is a 47-year old family man with two young children. He and his wife Sue Conner have been together for over 20 years and have lived and raised their children in the East Bay. Born on July 5, 1969, in Concord, California, Mr. Conner was the youngest of four children born to his mother Geneva Conner (80 years old) and father Billy Conner (84 years old). Mr. Conner has two sisters, Patty Conner (61 years old) and Cathy Conner (58 years old). He has one older brother, Robert (52 years old).

His father was a career naval officer who became a chief engineer at an East Bay hospital following his retirement from the navy. Mr. Conner's mother took care of the kids and maintained the house.

Conner is a product of the Bay Area and was raised primarily in the city of Pittsburg as a member of a close-knit family. His family often spent time together engaging in outdoor activities such as camping and fishing. Such activities helped to foster a sense of family togetherness that Conner has tried to replicate with his own wife and kids.

But as much as he loved camping and fishing as a kid, it was bicycles that most engaged and captivated Conner. He loved riding them, but even more he loved taking them apart and putting them back together. He was intrigued with learning how things are constructed and how they operate. He became obsessed with all things mechanical, and spent much of his free time as a teenager working on cars and car engines.

Conner became skilled with working with his hands. In high school he became a teacher's aide not only for the auto-shop program, but for the arts and craft program as well. His mechanical skills and

craftiness helped him develop a self-confidence and independence that served him well in all of his classes. Conner graduated high school after maintaining a 3.5 GPA.

Following high school Conner was clear on one thing -- he wanted to find work either as an automobile mechanic or in some other field where his mechanical skills and skills with tools could be developed. He began working with a tool repair company in Pittsburg, and he also began developing a work ethic that would follow him for the rest of his life. Conner found that he enjoyed working, and he loved learning about tools, how they are used and how they are manufactured. The owner of the tool repair company, Greg Cocotis, found Conner to be extremely reliable, honest and hardworking. Their employment relationship turned into a friendship that continues to this day. Indeed, their families have become very close. Shayne Cocotis, Greg Cocotis's son, has written a letter to the Court on Conner's behalf, and it, as well as other letters, is submitted with this memorandum.

Conner's work and skills with his hands provided fulfillment and enormous enjoyment in his life. But it was starting a family that changed his world. Mr. Conner met his wife Supanee (Sue) in 1996. Their relationship blossomed and they married in 2001. Within a few years they had their first child, Jolie, who is now 14 years old. Their second child, Seth (10 years old), followed a few years later.

Being a father has been of singular importance to Conner. He has enjoyed watching his children grow, helping them with school, sports and other activities, and simply being a dad. It has been important to Conner that his children experience the family love and stability that he enjoyed during his childhood. Conner has also tried to instill in his children the values he has always found important, such as hard-work, industriousness, self-reliance and generosity. Conner's commitment to being a father has paid off; he and his wife are in the process of raising two outstanding children who are secure in knowing that they are loved and valued.

It is, of course, the impact of this case and his mistakes upon his children that haunts Conner every day. Conner has always been present, physically and emotionally, for his kids. He has been their

mentor, friend, protector, confidante, and guide. Their world will change as a result of this case, not for the better, and that fact causes Conner great pain.

***Education***

Conner graduated from Concord's Mt. Diablo High School in 1987 with a 3.5 GPA. Although he has no college level degrees, following high school Conner took several courses relating to his interests in automobiles, machinery and mechanics at Los Medanos Community College in Pittsburg.

***Employment & Employment Related Injuries***

Conner is a member of the Steelworker's Union. Throughout his employment he has operated heavy equipment and complex machines. He is skilled in manufacturing, welding, mechanical repair, electrical and finishing. He has worked largely continually since he graduated from high school in the late 1980s. Initially, Conner worked for heavy tool and equipment companies such as Northwestern Equipment & Supply Company and Bay Saw & Tool Repair Company. In 2006 Conner began working for steel manufacturer USS-POSCO. Conner worked repairing POSCO's heavy manufacturing equipment.

Conner thrived with POSCO. His willingness to work hard and push his endurance was valued by co-workers and supervising managers alike. He prided himself on keeping the equipment on-line and operating, which increased productivity of the employees and the plant itself. However, the hard work and earlier sustained injuries ultimately took a physical toll on Conner. He began experiencing chronic pain to his back and limbs. Fearing for his job and his ability to provide for his family, Conner learned to live with the pain and continued performing hard, physical work. He attempted to maintain his strength and manage his pain by sticking with stringent workout routines at the gym and treating with chiropractors. He even learned how to self-pop his back into place when it was unaligned.

By 2008, Conner was advised to have surgery on his back. Again, fearing the uncertainty of surgery, Conner declined. He instead received an epidural and continued physical therapy, gym workouts, medication and chiropractor treatments. However, by late 2009, the back pain was so severe it could not be ignored and surgery could not be avoided. Conner finally had back surgery in July of 2010.[2]

Surgery provided some (although not complete) relief from the back pain. Upon returning to work Conner worked as a millwright for the steel mill. As a millwright Conner again maintained and repaired equipment, but the job involved less lifting of heavy matters. Still the job required lifting, frequent travels up and down steep stairs, and other physical demands.

By 2015and into 2016 other chronic, painful, serious physical ailments began to manifest. Back pain, neck pain and sciatica have made it difficult for Conner to walk, sit for any extended period of time, and sleep. meniscus tears in Conner's right knee, and ligament tears in his left shoulder and left bicep required surgery to repair (Conner had knee surgery in the Fall of 2016; shoulder/bicep surgery took place in February 2017). Conner's doctors are currently evaluating whether another back surgery is recommended. At this time Conner is still undergoing physical therapy treatments to help with the recovery to the injury to his shoulder.

While the surgeries Conner has undergone have provided some relief, it is apparent that Conner will likely face chronic pain for the remainder of his life. At this time he experiences often debilitating pain in his back, neck, and up and down his legs. The pain impacts every aspect of his life, including sleeping, walking, sitting, standing and exercising.

---

[2] Conner's relevant medical records and surgical reports have been provided to the government and probation. However, Conner's shoulder surgery took place after the submission of the PSR. Those records, and other recently obtained records that have been provided to the government are attached to this Memorandum as Exhibit A.

***Character and Support***

Conner's actions around this case do not make him proud. Conner's conviction in this case was met by surprise and dismay by friends, co-workers and family members. He has for a very long time been known as a stalwart member of the community and a plain-spoken, hardworking, honest family man. He is known as an enormously generous man who is always willing to spend his free time helping friends with their cars. He is known as a proud dad who loves taking his kids camping, and watching them participate in community and youth sporting events. Some of Conner's friends and family have written letters to the Court on his behalf.[3] Universally these letters attest to Conner's character, spirit and kindness. Excerpted below for the Court's convenience are pertinent portions of those letters:

**Letter from wife Sue Conner:**

- He is a selfless man, who lives to please those he cares most about. And although our marriage, like all marriages, has had some us and downs, Joe is a dutiful husband and a loving father to our two beautiful children, Jolie and Seth.

- He has never wavered from his promise to always be there for our two children and me.

- Becoming a dad was one of the happiest moments in Joe's life. Our children are his pride and joy. Joe is a good father who loves his children, Jolie and Seth so much. He spends quality time with our children at every moment he gets with them. Just that hug, listening ear, encouraging word, or time spent with their dad has produced two happy kids.

- Joe has always chaperoned Jolie's and Seth's numerous school field trips. Joe is at all of our children swim practices, meets, and volunteers all of his time to help during our kids' swim meets. He attends al of their extracurricular activities such as soccer, tennis matches, flag football, dance lessons and recitals and Muay Thai boxing lessons.

- Even with his ongoing hip, back pain and knee pain from a recently torn meniscus, Joe continues to push through the pain to support our family.

- Joe and I hurt for our children and worry about how it is going to affect them; how they ae going to cope, what they have to face at school, how they are going to manage. We pray every day for the well-being of our children, Jolie and Seth.

[3] The letters are presented together as Exhibit B to this Memorandum.

- Joe is very remorseful and suffers anxiety from this whole event. Joe has cried, I have cried and our children Jolie and Seth have cried when they think about the future of their father.

**Letter from Daughter Jolie Conner (14 yrs. old):**

- I know the man being convicted of this crime is not the person I know. He is someone who puts people before himself. He works long hours just to support our needs and us.

- He always cracks jokes and still watches cartoons with my brother and I. He still even enjoys remote control cars. He gives us the most. He is the best father I could ask for. Now when I found out how my life could drastically change I was heartbroken.

**Letter from son Seth Conner (10 yrs. old):**

- Hi, my name is Seth and I am writing this letter on behalf of dad, Joseph Conner. I feel bad about the sentencing if I spelled that wrong I am sorry. I am in the fifth grade. I cannot take all of what is going on. I start crying when I think about my dad going away. My dad raised me well and he knows how to fix cars. He makes sure I am always doing my homework. He cooks breakfast, makes my school lunches and makes healthy dinners for my sister and me. He never misses my football games and always there to help me practice my football throws.

- I am writing this letter to you to let you know my dad says he is sorry and he has learned his lesson. I love my dad and if I ever graduate and my dad isn't there for any of the important things in my life I feel really sad. I am sad right now. This is the saddest I ever felt in my entire life.

**Letter from family friend Shayne Cocotis:**

- I've known Joe my entire life I can remember.

- In all the years that I've known Joe I have never had any doubts in his integrity to do the right thing and take care of friends and be a father for his family to the very best of his ability.

- He has been there for me when I needed help many times, and has been a friend I could always count on.

- What needs to be said as very important to be taken from this letter is that Joe Conner is a good person.

**Letter from Longtime friend and co-worker Evan Abbet:**

- Joe is a very hard worker and excels in whatever task is thrown his way, a true craftsman. Where others will take the short and easy path and "slam" a job out, Joe is the constant professional and will fight to do the job the right way.

- Joe has made mistakes, and he is incredibly remorseful, and is willing to do whatever it takes to make reparations, financially and emotionally, if possible.

**Letter from friend Daric Mathis:**

- My friendship with Joe began in about 1987. I found that he was a hard-working and talented person with a lot of skills and knowledge of automotive repair. Joe was always ready to help me or anyone in the community with their cars whether it was bodywork or mechanical repair. Joe is a great person with a big heart that will go out of his way at a moment's note to help anyone.
- Joe is a friend and peer to many other people. At an early age, he taught me that people make mistakes and it is up to them to learn from those mistakes. I have found this to be one of the most valuable lessons of my life and have passed it along to others, so there has been an outward ripple effect to Joe's good influence.
- Please take some time and consider Joe as a good man that made a mistake.

**Letter from childhood friend Terry Thompson:**

- I have known Joe and his entire family since I was a senior in high school and he was a junior in high school, 30 years now….He has an excellent reputation as someone who cares about his friends or anyone in need of his help.
- Today they have two amazing children, Jolie and Seth, who have been raised with excellent morals and family values. They are smart, loving and respectful. My children always look forward to getting together with the Conner family and spending time with the kids.
- As we all know friends come and go during our lifetime, with that said I can tell you that I don't have many friendships that have lasted as long as my friendship with Joe. Joe is an amazingly, loving, caring and giving friend. He has a great sense of pride in all that he does with integrity and dignity that can't be found in too many people.
- I am 100% sure that Joe has learned and will grow from the mistake he has made.

**Letter from niece Stephanie A. Rowe:**

- I have seen how thoughtful he was towards his friends and our family over the years. He had given a friend some side work when they needed money. He had taught his nephew how to paint and work on cars. He has worked very hard for his family ensuring that his wife and kids have the best of things as well as his support in whatever interest they wanted to pursue. I believe that he will learn from this incident and become a stronger and better man, husband, father and uncle.

**Letter from Co-worker Steven Shott:**

- Joe has worked at USS/POSCO since 2005 and I can attest that he is a very hard worker that is very reliable, Joe shows up ready to work every day. He gets along with all of his co-workers very well and seems like a great family man the way he is always talking about his kids and wife, a very positive man that would give you the shirt off his back if you needed help.

- I have talked to Joe about his current situation he is in and he has a lot of regrets and remorse. I never thought that I would see Joe break down and cry, but he did while we were alone at work talking. He knows he can lose it all, wife, kids, freedom, job, etc.

- I was shocked to hear of the mess Joe had gotten himself into, it seemed very out of character for the Joe that I have come to know. For what it is worth your Honor I can feel good about giving you my highest character reference for Joe….

**Letter from friend Matt Perrin:**

- When his daughter was born, it changed his life. No more crazy late nights working on stuff he became a responsible family man always focused on being home with his family. … As his kids got older, he would bring them over to my house with him if we were working on something ad always being a family thing. Everything he did always included is family and it was a lot of fun that way. To this day, everything resolves around his family and especially his kids and their sports and activities.

**Letter from in-laws Phong & Glen Courtney (Parents of Conner's Wife Sue, and grandparents to his kids):**

- The one thing I know is seems to love his family, and spends time with our daughter and the kids. The thought of my grandkids having to grow up without their father is very hard on my wife and myself. We can't imagine what this will do to the grandkids. …In my opinion he is sorry for what he has done to get where he is now and would change things if he could.

***Acceptance of Responsibility, and Remorse***

As stated in the many of the family and friend letters submitted to the Court, there is no doubt that Conner has been full of remorse regarding his actions in this case. He has found it difficult to explain to his friends and family members – people who have looked up to him for years -- how he allowed himself to become involved in these activities. But he has acknowledged his mistakes and has forthrightly and completely accepted responsibility for his actions in this case. Conner has made a written Statement of Responsibility and it is submitted with this memorandum (attached as Exhibit C). Conner's acknowledgment of his responsibility is complete and direct – "I pleaded guilty because I am guilty. My behavior in this case represents, without question, the greatest mistake and lapse of judgment of my life." Conner's remorse is equally clear – "it is devastating to me that not only are my actions the opposite of what I have taught my kids, but that it is those kids who will pay the greatest price for my mistakes. I could not be sorrier for the harm that my mistakes have caused".

***Mitigation***

Conner does not shirk from accepting responsibility for his behavior in this case. His actions were wrong and he is very clear about that fact. However, his behavior that led to this case represents anything but the sum of Conner's life. He is the man who committed these crimes and mistakes during this period of time. He also, however, as noted above he has been a well-respected and longstanding member of his community, hard-working exemplary employee, a loving husband and, most importantly, a responsible and devoted father.

Moreover, Conner's physical condition is bad and deteriorating. Years of working with heavy machinery in and out of steel mills has taken a heavy physical toll. Conner's medical issues are discussed above. He now lives with chronic pain and has very limited mobility. As a result, any period of time Conner spends incarcerated will be more difficult, treacherous and arduous than would be the same period of incarceration for a normal inmate without his myriad of physical difficulties. Indeed, given his physical condition Conner will be a vulnerable inmate amongst the prison population.

## V. A Sentence Variance Would Be Appropriate In This Case

The probation officer who conducted the investigation for sentencing has recommended a variance and a below guideline sentence. He did so based on Conner's non-scorable criminal history, his compliance with pretrial release over a significant period of time, and his importance in the lives of his wife and young children. Conner concurs with probation and also asks for a below guideline sentence. As demonstrated above, the totality of factors clearly demonstrate that a below guideline sentence is "sufficient" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a). Conner's lack of a significant prior criminal record, his otherwise good character, the chronic pain and ailments that continue to plague him and will make any incarceration excruciating, and his obvious remorse and acceptance all make a sentencing variance fitting in this case.

**VI. Conclusion**

For the above reasons, Conner requests the Court sentence him to a term of no more than five years of incarceration.

Dated: April 3, 2017

Respectfully submitted,

LAW OFFICES OF MICHAEL HINCKLEY

/s/ Michael Hinckley

By ________________________________

MICHAEL HINCKLEY